CUSHMAN ET AL., APPELLANTS, v. THE HIGHLAND DITCH
COMPANY, APPELLEE.

1. WATER RIGHTS.
Prior appropriators of water are entitled to have the same flow unim-
    paired in quantity and without permanent or unreasonable deteri-
    oration in quality.
2. PRACTICE.
A judgment denying an injunction and dismissing the action, which was
    brought to restrain the commission of acts in anticipation of the
    consequence thereof being permanently injurious, is affirmed in
    this case, without prejudice to another suit when the actual result
    of the proceeding complained of is susceptible of proof, and can be
    shown to be permanently injurious and wrongful.

*Appeal from the District Court of Boulder County.*

Messrs. MINOR and STOCKTON and Mr. J. H. RANDALL, for
appellants.

Mr. B. L. CARR and Mr. F. P. SECOR, for appellee.

BISSELL, P. J., delivered the opinion of the court.

The parties to this suit were on one side the owners and
occupants of lands along the line of St. Vrain creek, and on
the other a corporation called the Highland Ditch Company,
which was a distributer of water to its stockholders. The
plaintiffs and appellants were old settlers along the line of
the stream, and had very ancient and early rights to the
water, which they had diverted by their ditches and appro-
priated by application to their lands. The Ditch Company
seems to have been organized by later settlers farther down
the stream, who were not always able, with due regard to the
early appropriators' rights, to obtain what was necessary for
the irrigation of their lands. To remedy this difficulty in a
measure the corporation constructed a reservoir at a point
above where the plaintiffs' ditches take their water from the

stream, and in a natural basin, which in the early times was called the McIntosh lake. This was an ancient slough known to the residents of that section in the very early 60's as an alkali slough. According to the description given of it by the witnesses, in the rainy season it contained considerable water, but towards the latter part of the summer it was nearly dry, and its surface became apparently one white mass of alkali. In the execution of their plans, the Highland Ditch Company built a dam across the lower part of the lake, and thereby flooded two or three hundred acres of land, and were able to put into the lake water to a depth of ten or fifteen feet. The opportunity to get this water was furnished by a contract which they had with another ditch company, and was apparently exercised at that season of the year, when waters were high and unused by other appropriators. After the dam was built, the company started to construct a drain ditch from the reservoir down to St. Vrain creek for the purpose of drawing off all the water in the lake, or substantially all of it after it should have been filled, to flush it and purify it by the removal of the alkalies, which would necessarily be absorbed and held in solution by the body of water with which the lake was filled. The plaintiffs filed their bill on the theory that the turning of this vast body of alkali water into the St. Vrain creek, which was the declared purpose of the Ditch Company, would so pollute the waters of the St. Vrain as to render them unfit for irrigation or domestic purposes. It will be observed that the water had never been turned into the creek, and that the ditch had not been constructed at the time the bill was filed. To sustain their action, the plaintiffs showed by chemical and professional testimony, as well as by the testimony of farmers, that the waters of the lake were impure, and held (according to some of the witnesses) nearly two hundred grains of solid alkaline matter to the gallon, when thirty-five is the limit consistent with safety. They also offered proof concerning the digging of the ditch through the lower end of the slough, and the consequent appearance of alkali wherever the land was disturbed, and considerable

proof showing that the whole country was thoroughly impreg-, nated with these foreign and deleterious substances.    On the other hand, there was evidence which tended to show that the flushing of the lake would purify the water and do no permanent harm to other appropriators, and that the storage would be a very great benefit to the stockholders of the ditch, and bring a large quantity of land under cultivation.    On the hearing, the interlocutory injunction which had been granted was dissolved and a decree entered dismissing the bill.    Under the well established rule governing appellate procedure, the judgment must be affirmed.    There is no question that riparian owners and these prior appropriators of water are entitled to have the St. Vrain creek flow unimpaired in quantity, and unpolluted in any permanent and unreasonable way.    The law which entitles parties to preserve the purity of the streams, whose waters are theirs by purchase or by appropriation, is so thoroughly well settled that it can only be assumed the court found upon the evidence there was no proof which would establish a probable permanent injury to the complainants.    It is quite true that the record furnishes a very strong basis for the opinion that the result may be otherwise.    If the present judgment was conclusive of the question and resulted in the permanent settlement of it against the rights of the complainants, this court might be disposed to review the case, and send it back for another hearing.    We are always reluctant to disturb the findings of a lower court as to questions of fact, and do not concede this to be a case where necessity requires a departure from the ordinary rule.    Before this time, the drain ditch has been constructed, the reservoir has undoubtedly been flushed, and it is a matter probably susceptible of proof to the satisfaction of a jury and of the court, as to what the actual result of the proceeding is.    The parties undoubtedly have the right to bring what was formerly an action on the case to recover damages, or a right to file a bill and restrain the company from using the reservoir, if they are able to

satisfy the court that it is of a permanently injurious and wrongful character.

Since this is true, the judgment dismissing the bill will be affirmed, with costs, but without prejudice to the right of appellants to bring such action at law or file such bill in equity as they may be advised.

*Affirmed.*